# Richmond.

## Dry *v.* Rice.

### March 17, 1927.

1. Foreign Judgments and Decrees—*Jurisdiction of Courts of this State Over Foreign Judgments and Decrees—Alteration and Amendment— Void Foreign Judgments and Decrees—Setting Aside Decree of Foreign Court.*—The courts of this State have no jurisdiction whatsoever over the judicial proceedings of another State, and cannot alter, amend or repeal them, however erroneous they may be. If void, the courts of the State may ignore them, and they may inquire into the jurisdiction of the foreign court over the parties, but they can act only on the parties before the court. They cannot set aside a decree of a foreign court.

2. Divorce—*Foreign Decree—Jurisdiction of Foreign Court—Evidence as to Residence in Foreign State by Party Obtaining the Divorce—Case at Bar.*—In the instant case, complainant attacked a decree of divorce obtained by his wife in another State. He attempted to show that the court rendering the decree was without jurisdiction because defendant (the wife) had not resided in the other State for six months prior to the institution of her suit for divorce. In this attempt he failed. The positive statement of the wife as to the length of her residence in the State in which the decree of divorce was obtained could not be overcome by mere estimates of times based on uncertain facts.

3. Divorce—*Foreign Decree—Jurisdiction of Foreign Court—Evidence as to Residence in Foreign State by Party Obtaining the Divorce—Determination of Jurisdictional Facts by Court in which Decree was Rendered— Case at Bar.*—In the instant case, complainant attacked a decree of divorce obtained by his wife in another State. He attempted to show that the court rendering the decree was without jurisdiction because defendant (the wife) had not resided in the other State for six months prior to the institution of her suit for divorce. The court rendering the divorce decree having determined the jurisdictional fact that the wife had resided in that State more than six months before the suit was brought, its finding could not be ignored and treated as void, except upon satisfactory evidence to the contrary.

4. Divorce—*Foreign Decree—Bona Fide Residence in State in which Decree was Obtained—Validity of Decree.*—In a suit by a husband attacking

a divorce obtained by his wife in another State, on the ground that the wife never acquired a *bona fide* residence in the other State and that the divorce decree was obtained "upon misrepresentation and the grossest kind of fraud," if the evidence warrants such a conclusion, and the husband neither appeared nor was served with process, the foreign decree is not binding on the courts of this State and may be treated as void.

5. FOREIGN JUDGMENTS AND DECREES—*Divorce—Residence in State where Divorce was Obtained—Laches.*—Where a husband attacked a decree of divorce obtained by his wife in another State, on the ground that her residence in the other State was not *bona fide*, it is not necessary to determine whether the residence was or was not *bona fide*, where the husband was precluded by his laches in attacking the divorce obtained by his wife, from setting up the charge of lack of *bona fide* residence.

6. DIVORCE—*Foreign Decree—Lack of Jurisdiction of Foreign Court—Evidence to Establish Fraud must be Satisfactory and Convincing—Presumption in Favor of Jurisdiction of Foreign Court.*—Where a husband attacked a decree of divorce obtained by his wife in another State, while lack of jurisdiction of the foreign court may be shown, yet where it is sought to impeach such judgment for fraud imposed upon the foreign court touching a jurisdictional fact, the evidence must be of the most satisfactory and convincing kind, for every presumption will be indulged in favor of jurisdiction found by the foreign court, until the contrary is clearly shown.

7. DIVORCE—*Foreign Decree—Laches—Failure of Defendant to Attack Decree—Case at Bar.*—In the instant case, divorce was granted a wife in another State. The husband was served with the summons in the divorce suit and a copy of the bill and testified that he had full knowledge of their contents. About two months after the divorce the wife returned to her former home in this State and remained for a year. Her husband saw her a number of times, but never mentioned the divorce, nor did the record disclose that he had any grounds for supposing that a reconciliation was possible, or that he took any steps to avoid the foreign decree. The divorce was granted September 20, 1922, and not until March 2, 1925, after the former wife had married another man, was the instant suit attacking the foreign decree instituted.

   *Held:* That the husband was precluded by his laches from setting up fraud in his wife in obtaining the foreign divorce decree.

8. LACHES—*Period Short of the Statute of Limitations—Mere Delay.*—Mere delay, short of the statute of limitations, is not of itself laches, but where such delay is attended by the loss of material evidence, by the death of parties or witnesses, or by the change of the relation of parties which cannot be restored, or by injury to innocent third persons which cannot be compensated in damages, a court of equity

will not lend its aid to the enforcement of an otherwise apparent right. Courts of equity are not quickened to action by those who have slumbered upon their rights.

9. DIVORCE—*Laches—Change in the Relation of the Parties.*—The rule which requires a defrauded party to act promptly for the protection of his rights is peculiarly applicable to suits for divorce, lest by delay the relations of the parties be changed, the rights of innocent third persons intervene, and the peace of society be disturbed. While judgments in divorce cases are as fully within the common law power of the courts in which they are rendered as are other judgments, there are cogent reasons for the application of the rule which requires diligence on the part of those who ask to have such judgments set aside for fraud. Public policy requires that persons who seek the aid of courts in this respect shall not neglect to take care of their own rights.

Appeal from a decree of the Circuit Court of Princess Anne county. Decree for complainant. Defendant appeals.

*Reversed in part.*

The opinion states the case.

*Groner* and *Gary,* for the appellant.

*A. Johnston Ackiss,* for the appellee.

BURKS, J., delivered the opinion of the court.

Frank C. Rice (appellee) filed his bill against the appellant, in which he alleges that they were married on December 8, 1897; that all of his accumulations during their married life had been invested in real estate, which he had caused to be conveyed to her, and which now stands in her name; that their relations "had always been of the kindest sort;" and that while they were living thus peaceably together, she had, without cause and greatly to his surprise and discomfort, gone to Nevada, on March 1, 1922, instituted and obtained a divorce from him, and had thereafter

contracted a marriage with another man. He practically admits in the bill, and it is fully proved, that a copy of the bill for divorce was served on him in September, 1922, and that he read it, but "did not attach much importance" to it. The bill in the instant case vigorously assails the validity of the Nevada decree on the ground that she never acquired any *bona fide* residence in Nevada, and that "the court in Nevada could not legally grant her a divorce because her matrimonial domicile was in the State of Virginia, and if she had succeeded in getting a decree from a competent court in the State of Nevada, it was upon misrepresentation and the grossest kind of fraud.". The bill asks "that he may be granted a divorce from the said defendant from the bonds of matrimony; that a receiver may take charge of the property accumulated as aforesaid, and that a proper division of the same may be made, if the court should be convinced upon a final hearing of this case that a fraud has been perpetrated upon him."

The defendant answered, denying every charge of misconduct of any kind on her part, or that the complainant had any interest in the property mentioned in the bill, or that the court in Nevada was without jurisdiction to grant the divorce, and filed as an exhibit with her answer a certified copy of the entire proceedings in the divorce suit, including the testimony.

At the hearing, the testimony was taken *ore tenus* before the trial judge, who decreed as follows:

"On consideration whereof, the court being satisfied that there is no merit in the complainant's claim of an interest in the real estate of the defendant, as described in the said bill, and that the said plaintiff is not entitled to the said real estate or to any part thereof or to any division thereof:

"It is, therefore, adjudged, ordered and decreed that the plaintiff's bill, as to so much thereof as pertains to the real estate of the defendant, be, and the same hereby is dismissed.

"And the court being further of the opinion that the divorce obtained by the defendant in Carson City, Nevada, on the 29th day of September, 1922, was obtained upon false grounds, doth so decide and the said decree is set aside,    *    *."

From so much of the decree as sets aside the decree of divorce of the Nevada court, the defendant appealed.

[1] The decree, in form at least, is manifestly erroneous. The courts of this State have no jurisdiction whatsoever over the judicial proceedings of another State, and cannot alter, amend or repeal them, however erroneous they may be. If void, the courts of this State may ignore them, and they may inquire into the jurisdiction of the foreign court over the parties, but they can act only on the parties before the court. They cannot set aside a decree of a foreign court. So far has this doctrine been carried that it has been held that where a judgment has been rendered on the law side of the court, the *same court* cannot, on its chancery side, grant a new trial of the action at law.

In *Wynne* v. *Newman*, 75 Va. 811, 815, it is said: "If the complainant was entitled to relief, the mode of granting it was improper. At the hearing the court annulled the judgment, set aside the verdict of the jury and ordered a new trial in the action at law. A court of chancery, under our system of jurisprudence, is invested with no such power as this. It may act on the parties, but not directly on the judgment, nor on the court which rendered it. Such judgment by a court having jurisdiction to render it, can be vacated only by some direct proceeding at law, either in the court in which

the judgment was recovered or some other court having appellate jurisdiction. See 2 Story's Eq. Jurisprudence, section 1571; Graham & Waterman on New Trials, chapter 17, pages 1482, 1483, and cases cited.

"There are cases in which the court has required the defendant in chancery to submit to a new trial in the action at law, and restrained him from enforcing the judgment complained of. But the regular course would seem to be for the chancery court to order such issue or issues as may be proper, and to base its decree on the finding of the jury at the hearing, either dissolving or perpetuating the injunction, in whole or in part, according to circumstances. Such was the course pursued by this court in *Knifong* v. *Hendricks*, 2 Gratt. [43 Va.] 213 [44 Am. Dec. 385]. In the present case, if a new trial was proper, the court should have ordered an issue, the same as in the action at law, to be tried as other issues out of chancery are tried, the verdict of the jury, if the trial was in the law court, to be certified to the chancery court, and in the meantime continue the injunction till the hearing of the cause; and if the finding was for the defendant and affirmed, dissolve the injunction; if for the plaintiff, perpetuate the injunction and decree for the complainant according to the verdict."

[2, 3] The attempt to show that the Nevada court was without jurisdiction because the appellant had not resided there for six months prior to the institution of her suit is not sustained by the evidence. Mrs. Rice was in Philadelphia on February 28th, and the calculation of appellee to show that appellant had not resided in Nevada six months is based on the supposition that Mrs. Rice remained there ten days and that it took her "around five days" to make the trip to Nevada; but her statement as to her stay in Philadelphia was a mere

estimate—"I think around eight or ten days maybe," she said—whereas she is positive in her statement that she employed counsel on the day after her arrival in Nevada, and that she resided there six months before her suit was brought, on September 12th.   Her statement is also corroborated by the improbability that her counsel, residing there, would have brought the suit before the expiration of six months.   At all events, her positive statement as to the length of her residence is not overcome by mere estimates based on uncertain data.   The Nevada court having determined the jurisdictional fact that the appellant had resided in that State more than six months before the suit was brought, its finding will not be ignored and treated as void, except upon satisfactory evidence to the contrary.

[4] The most serious contention of the appellee is that the appellant never acquired a *bona fide* residence in Nevada, and that the divorce decree was obtained "upon misrepresentation and the grossest kind of fraud."   If the evidence warrants such a conclusion, and the husband neither appeared nor was served with process, the Nevada decree is not binding on the courts of this State and may be treated as void.   *Corvin* v. *Com'th,* 131 Va. 649, 108 S. E. 651, 39 A. L. R. 592.

[5] There is some evidence tending to show that the residence of appellant in Nevada was not *bona fide.* She returned to Virginia about two months after her divorce and remained "around a year," but she testified that this was for the purpose of looking after her property and renting it, and that she thereafter returned to Nevada and remained there until she went to California and married her present husband.   We shall not enter upon a discussion of the sufficiency of the evidence to sustain the charge of fraud in this respect, because we are of opinion that the appellee is precluded by his laches from now setting up that charge.

It should be observed, however, that while lack of jurisdiction of a foreign court may be shown, yet where it is sought to impeach such judgment for fraud imposed upon the foreign court touching a jurisdictional fact, the evidence must be of the most satisfactory and convincing kind, for every presumption will be indulged in favor of jurisdiction found by the foreign court, until the contrary is clearly shown. *Royal · Arcanum* v. *Corley,* 52 N. J. Eq. 642, 29 A. 813. See also *Kelly* v. *Kelly,* 118 Va. 376, 87 S. E. 567; *Humphreys* v. *Strong,* 139 Va. 146, 123 S. E. 554.

On September 19, 1922, the husband was served with the summons and a copy of the bill of complaint of his wife for the divorce, in ample time to make defense if he so desired. There is also evidence that he employed counsel to enter an appearance for him, and that the counsel so appeared, but we omit any discussion of this because he denies the authorization, although testified to by at least one, if not two, witnesses, not connected with the parties except by friendship to the wife. As to the summons and copy of the bill, however, the appellee admits in his testimony not only that they were served on him by Mrs. Powell, but that he had full knowledge of their contents. He testified in part as follows:

"Q. Did you receive a notice addressed to you from Mrs. Powell?

"A. Mrs. Powell gave me some papers.

"Q. Did you read them?

"A. I read them over and laid them down on the table, and somebody threw them in the trash basket.
*    *    *

"Q. Did you understand the general context of what the papers said?

"A. I did not pay any attention. Judge Ackiss told me the Nevada divorce would not amount to anything.

"Q. You knew it was a divorce?

"A. I thought so."

[7] The divorce was granted September 30, 1922, and about two months thereafter Mrs. Rice returned to her former home in Virginia and remained for a year, and her husband saw her and talked to her a number of times, but the record fails to disclose that the divorce was ever mentioned, or that he had, as he claims, any reasonable grounds for supposing that a reconciliation was possible, or that he took any steps whatever to avoid the Nevada decree, or to obtain the relief he now seeks.    Not until March 2, 1925, after his former wife had married another man, on February 24, 1925, was the instant suit instituted, and the only reason assigned by him for the delay was: "If she had not married again, I never would have brought this action, because I thought she would come back."    The time elapsing between the date of the decree for the divorce and the institution of this suit was nearly two years and a half.

[8] Mere delay, short of the statute of limitations, is not of itself laches, but where such delay is attended by the loss of material evidence by the death of parties or witnesses, or by the change of the relation of parties which cannot be restored, or by injury to innocent third persons which cannot be compensated in damages, a court of equity will not lend its aid to the enforcement of an otherwise apparent right.    Courts of equity are not quickened to action by those who have slumbered upon their rights.

[9] The rule which requires a defrauded party to act promptly for the protection of his rights is peculiarly applicable to suits for divorce, lest by delay the relations of the parties be changed, the rights of innocent third persons intervene, and the peace of society be disturbed.

As said in *McNeil* v. *McNeil*, 170 F. 289, 292, 95

C. C. A. 485, 488: "The safety of society imperatively demands that one who seeks to overthrow an apparently valid decree of divorce should proceed with the utmost promptness upon discovery of the facts claimed to show its invalidity. It must be apprehended that a man who has secured a decree of divorce, valid on its face, may endeavor to marry again, thus entangling some innocent woman in most intolerable difficulties, should the divorce be afterwards annulled. In such a case, one who seeks the aid of equity should, *in limine*, make it appear that she has proceeded in good faith and with reasonable diligence."

In *Nicholson* v. *Nicholson*, 113 Ind. 131, 15 N. E. 223, it is said: "It is, however, a familiar proposition, and one upon which all the authorities agree, that a party who seeks the aid of a court, and asks to be relieved from a judgment obtained against him by fraud, must proceed promptly upon the discovery of the fraud. Any unexplained acquiescence, with knowledge of the facts, and without valid excuse, for an unreasonable length of time will defeat an action to obtain relief from a judgment. *Earle* v. *Earle*, 91 Ind. 27. While judgments in divorce cases are as fully within the common law power of the courts in which they are rendered as are other judgments, there are cogent reasons, which need not be enlarged upon here, for the application of the rule which requires diligence on the part of those who ask to have such judgments set aside for fraud. Public policy requires that persons who seek the aid of courts in this respect shall not neglect to take care of their own rights."

Whatever rights the appellee had to assail the decree of divorce have been lost by his laches.

The trial court properly held that the appellee had no interest in the real estate mentioned in the bill.

The decree of the trial court, in so far as it holds that the divorce obtained by the defendant in Carson City, Nevada, was obtained on false grounds, and set it aside, will be reversed and annulled, and an order will be made in this court, dismissing the bill of the complainant, the appellee in this court, with costs to the appellant.

*Reversed in part.*