# Richmond

## W. P. HODNETT V. MYRTLE R. HODNETT.

November 15, 1934.

Present, All the Justices.

The opinion states the case.

*Whittle & Whittle* and *John W. Carter, Jr.*, for the appellant.

*Aiken, Benton & Bustard* and *W. R. Dalton*, for the appellee.

CHINN, J., delivered the opinion of the court.

This is a suit brought by Myrtle R. Hodnett against W. P. Hodnett, seeking to avoid a decree granting said W. P. Hodnett a divorce from the appellee.

The parties will be generally referred to as complainant and defendant, according to their respective positions in the court below.

The bill alleges that W. P. Hodnett instituted a suit for divorce against complainant in the Circuit Court of Henry county on December 5, 1927, and, on the same day process in the suit and notice to take depositions was served on the complainant; that on December 7, 1927, two days after the institution of said suit, it was agreed between the parties that complainant would go on a visit to her mother, residing in Reidsville, North Carolina, and remain at her mother's home until the defendant satisfactorily arranged and disposed of his business in Martinsville, Virginia, when he was to come for complainant and take her with him to Pulaski, Virginia, where they were to live as husband and wife; and the defendant would at once drop any further proceedings for divorce against the complainant and have the suit he had instituted dismissed. That relying upon this understanding with her said husband, complainant, accompanied by their nine-year-old son, went to her mother's home in Reidsville, where she has remained ever since; but, notwithstanding said promise and agreement, said W. P. Hodnett proceeded with the divorce suit, and on January 8, 1928, without her knowledge, obtained a decree granting him a divorce *a vinculo* for two alleged acts of

adultery committed by complainant on November 26, 1927, and December 3, 1927, awarding him the custody of their son, W. P. Hodnett, Jr., and extinguishing the marital rights of the parties in the property of each other; that said allegations of adultery were not true, and that even though they had been true, W. P. Hodnett was not entitled to obtain said divorce for the reason that he fully condoned the alleged acts of adultery on the part of complainant; that complianant was ignorant of the fact that depositions had been taken and the decree of divorce had been granted until she was informed of it by a friend several months afterwards; that had she been aware that the defendant had not kept his agreement to drop the divorce proceedings, complainant would have contested the suit and believes she could have defeated the decree entered therein; that said decree was granted against her through the exercise of fraud and deception against complainant and the court, and also by the perjury of W. P. Hodnett in his depositions, in which he stated he had not cohabited with the complainant since he discovered the alleged infidelity; that after the complainant had learned that defendant had obtained a divorce from her, she was led to believe that a complete reconciliation would shortly be effected between them, and it was not until complainant had learned that the defendant had married another woman during the month of December, 1930, that she found he did not intend to live up to his promises.

The bill prays that the said decree of divorce, "insofar as it affects your complainant and her rights in the property of the said W. P. Hodnett, and in the possession of her child, W. P. Hodnett, Jr., be set aside, revoked and annulled; that the court award to your complainant the care, custody and possession of said W. P. Hodnett, Jr., and adjudicate and award to your complainant what is a just and fair proportion of the property of the said W. P. Hodnett for her to have upon the termination of the marriage relationship between them;" that complainant also be decreed proper maintenance and support, and her counsel

be allowed a reasonable fee for their services in prosecuting this suit.

The defendant demurred in writing to the bill on the ground of laches, and also answered, denying that he had any such agreement with the complainant as was alleged in the bill, and that he promised or agreed to drop the divorce suit. The answer also denies that there was any agreement that marital relations be resumed between them; that he cohabited with the complainant at any time or on any occasion after he discovered her adultery, and that he in any way condoned said adultery.

Depositions were taken and, upon the hearing, the court overruled the demurrer, and entered the decree herein complained of, finding that the decree of January 28, 1928, was procured by fraud; that the defendant deceived the complainant and caused her to forego the privilege of defending said suit; that without passing upon the question of fact as to whether or not the said Myrtle R. Hodnett was guilty of the adultery charged against her in the divorce suit, should she have been guilty of the alleged acts of adultery, W. P. Hodnett completely condoned the same; that the complainant in this cause instituted her present suit within a reasonable time and was not guilty of laches; that said Myrtle H. Hodnett now has the same rights and interests in the said property of said W. P. Hodnett as she had before the entering of the said divorce decree, and the same right to expect and demand support and maintenance, and the same rights to access to and companionship of their said child, W. P. Hodnett, Jr., as she had before entering said decree.

The decree then provides that, "so much of said divorce decree entered at the January, 1928, term of this court that cuts off the said Myrtle R. Hodnett from her rights in the property of said W. P. Hodnett, and so much thereof as denies her support from his hands, and so much thereof as awards him the care, custody and possession of their child, W. P. Hodnett, Jr., * * * is hereby set aside, annulled and

modified; and so much thereof as affects any of her marital rights in the premises is hereby set aside and annulled."

The decree further provides that W. P. Hodnett, in settlement of the rights of said Myrtle R. Hodnett in any of his property, shall pay to Myrtle R. Hodnett the sum of $1,600 to compensate her for living expenses during the time she had been living apart from him since December 7, 1927, and for her future maintenance and support he should pay her the sum of $35 per month, beginning August 1, 1932, and each month thereafter; that he should pay her counsel a fee of $400 for their services in representing her in this case, and that all of these sums shall be treated as alimony money.

The decree then goes on to further provide that W. P. Hodnett shall be charged with the responsibility of supporting and educating W. P. Hodnett, Jr., and shall have his care and custody from the first day of September of each year until the first day of June of each succeeding year, and that said Myrtle R. Hodnett shall have his care and custody during the months of June, July and August of each year.

From the foregoing decree W. P. Hodnett has taken this appeal.

Whether or not Mrs. Hodnett failed to contest the divorce suit in question because of false promises, made to her by the defendant, as alleged, and, if so, whether or not she would have been able to make a successful defense to said suit, as also alleged, are questions of fact upon which the evidence is in direct conflict. In the view we take of the case, however, it is unnecessary to pass upon those questions for the reason that, even if it be conceded that the evidence is sufficient to sustain said allegations, we think it clear that Mrs. Hodnett has lost the rights she is now undertaking to assert by her laches in waiting until the defendant had married another woman while a decree of divorce, valid on its face, was in effect, before taking any steps to correct the fraud she claims was perpetrated upon her.

In the case of *Dry* v. *Rice*, 147 Va. 331, 137 S. E. 473, 475, the late Justice Burks, speaking for the court, said:

"The rule which requires a defrauded party to act promptly for the protection of his rights is peculiarly applicable to suits for divorce, lest by delay the relations of the parties be changed, the rights of innocent third persons intervene, and the peace of society be disturbed.

"As said in *McNeil* v. *McNeil*, 170 F. 289, 292, 95 C. C. A. 485, 488: 'The safety of society imperatively demands that one who seeks to overthrow an apparently valid decree of divorce should proceed with the utmost promptness upon discovery of the facts claimed to show its invalidity. It must be apprehended that a man who has secured a decree of divorce, valid on its face, may endeavor to marry again, thus entangling some innocent woman in most intolerable difficulties, should the divorce be afterwards annulled. In such a case, one who seeks the aid of equity should, *in limine*, make it appear that she has proceeded in good faith and with reasonable diligence.

"In *Nicholson* v. *Nicholson*, 113 Ind. 131, 15 N. E. 223, it is said: 'It is, however, a familiar proposition, and one upon which all the authorities agree, that a party who seeks the aid of a court, and asks to be relieved from a judgment obtained against him by fraud, must proceed promptly upon the discovery of the fraud. Any unexplained acquiescence, with knowledge of the facts, and without valid excuse, for an unreasonable length of time will defeat an action to obtain relief from a judgment. *Earle* v. *Earle*, 91 Ind. 27. While judgments in divorce cases are as fully within the common law power of the courts in which they are rendered as are other judgments, there are cogent reasons, which need not be enlarged upon here, for the application of the rule which requires diligence on the part of those who ask to have such judgments set aside for fraud. Public policy requires that persons who seek the aid of courts in this respect shall not neglect to take care of their own rights.' "

Mrs. Hodnett admits she knew of the decree of

divorce as early as Easter 1928, and yet she stood quietly by until her husband married in December, 1930, and then waited until July 28, 1931—seven months longer—before she filed this bill, complaining of the decree. In an attempt to evade the consequence of her laches, Mrs. Hodnett testified that she told the lady whom her husband married, some time before the marriage took place: "Miss Hopper, I am not saying what I will do or what I will not do, but I am liable to give you both trouble, since I haven't had a fair deal." She says she meant by this statement that she had not had a fair deal in reference to property rights, and that it was a sufficient warning to Miss Hopper not to marry the defendant. If Mrs. Hodnett had told Miss Hopper before the marriage occurred that her husband had practiced a fraud upon her in the procurement of the decree of divorce, she might then have had some ground for saying that she had given Miss Hopper notice of her purpose to attack the validity of the existing divorce, but we do not think what she testifies she told Miss Hopper in reference to her claims on Mr. Hodnett's property in any sense brought home to her the claim she now makes that the divorce was obtained by fraud. It moreover appears from the evidence that Mrs. Hodnett had knowledge of the defendant's intention to marry Miss Hopper several months before the event took place and, therefore, had ample opportunity to bring this suit in time to avoid placing the latter in the unfortunate situation she would occupy in case the divorce decree is declared invalid. Mrs. Hodnett's conduct in this respect constitutes such laches under the circumstances as bars her right to assail the decree of divorce on the grounds alleged.

As previously noted, the decree entered by the lower court does not vacate the divorce decree of January 8, 1928, but merely annuls, in accordance with the prayer of the bill, so much thereof as cuts off Myrtle R. Hodnett from her rights in the property of W. P. Hodnett, denies her support from his hands, awards him the custody of their child, and affects the marital rights of Myrtle R. Hodnett.

It thus seems that although the decree expressly refrains from annulling that portion of the divorce decree which dissolves the marriage between the parties, the court proceeded to award Mrs. Hodnett a lump sum of money, future alimony, and counsel fees. While alimony may be granted without a divorce, it seems obvious that alimony cannot be allowed to a wife who has been divorced for adultery, as long as the decree of divorce remains in effect, as it does under the decree of the lower court in the instant case.

For the foregoing reasons we are of the opinion that the decree of the lower court should be reversed, and the decree of divorce granted W. P. Hodnett by the said court on the 8th day of January, 1928, allowed to remain in full force and effect; and that complainant's bill should be dismissed, accordingly.

*Reversed.*