# Richmond

## CAROLYN McNEIR v. BURROWS McNEIR.

October 13, 1941.

Record No. 2399.

Present, All the Justices.

The opinion states the case.

*Weaver, Armstrong & Marshall,* for the appellant.

*Walter H. Robertson* and *Charles G. Stone,* for the appellee.

BROWNING, J., delivered the opinion of the court.

The parties in this suit were married in the state of Connecticut in 1912. Thereafter they resided in the state of Virginia until 1935, when their domestic troubles culminated in the act of the wife who left her husband and went to Reno, Nevada, for the purpose of being divorced. There she instituted suit for an absolute divorce upon the ground of desertion.

The defendant submitted to the jurisdiction of the Nevada court by filing an answer to the bill of complaint and by being represented by counsel. A decree was entered on February 4, 1936, dissolving the bonds of matrimony existing between them and granting the wife an absolute divorce and restoring to each of the parties the status of a single person.

Two children were born of the marriage who had become adults when this litigation began. Subsequently the appellant went to New York and was residing there in 1940, when she instituted the suit in Virginia with which we are now concerned.

About May 9, 1936, the appellee was married to a Miss Harper in Washington, D. C., who is now living with him in the county of Fauquier, Virginia.

The appellant prayed that the decree of divorce of the Nevada court be declared null and void because the court was without jurisdiction to grant it for the reason that neither of the parties was ever actually domiciled in Nevada and that the divorce had been obtained through "false and fraudulent misrepresentations and testimony". She charged that she and the appellee had entered into an oral agreement to become separated upon consideration of his promise to pay her the sum of $1,000.00 and all the costs and attorney's fees incident to a divorce in Nevada and the further consideration of his continuing to contribute to her support and maintenance. She alleged that his promises were conceived in fraud and deception; that he never intended to keep and perform them; that they were made to induce her to apply for a divorce; that she was now in dire need and

his circumstances were the reverse. She further charged desertion and prayed for an absolute divorce and alimony.

The appellee demurred to the bill on the ground that the complainant had come into court with unclean hands and was seeking to take advantage of the fraud she had perpetrated upon the Nevada court and that she had been guilty of gross laches and that the divorce decree was regular in all respects and it was entitled to full faith and credit in the courts of Virginia, and that it did not lie in the mouth of the complainant to attack the decree which she had obtained.

The court below sustained the demurrer upon each of the grounds alleged and dismissed the bill.

The decree of the trial court is plainly right. As we have seen, both parties were actually within the jurisdiction of the Nevada court. The complainant had complied with its laws and the case was submitted for its determination. Therefore, there can be no question of the binding effect, upon the parties, of its decree. She chose the jurisdiction and the tribunal before which she produced her cause, and brought forth her strong reasons.

There are three principles of equity jurisprudence involved. The application of any one of them will defeat the appellant's contention. It is a hallowed rule of equity that a plaintiff must come in with clean hands, that is, he must be free from reproach in his conduct. Indeed this is one of the maxims of equity. The appellant is far short of meeting this requirement. We note that the bill of complaint was signed and sworn to by her. Thus she is in the unenviable position of one who has sworn that the divorce which she sought and obtained was secured through "misrepresentations and false and fraudulent testimony"; that perjury, to which she was a party, was its basis. Reflection resolves her position into an unthinkable one. Again, she offends a principle of law, that one cannot profit by one's own

wrong. This is an ally of that species of equity known as "equitable estoppel" which arises from conduct. The appellant's own conduct brought about the conditions of which she now complains. By it she is estopped to assert a different state of facts.

■ ■ Another principle of equity which is applicable is estoppel by laches, which is the neglect or omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to an adverse party. The appellant waited four years to attack the decree which she had obtained, although she must have known that the appellee had remarried shortly after the divorce. She was heedless of her bounden duty to speak promptly of her grievances, if any she had. Her efforts, if successful, would stain the character of an innocent person and would cast doubt upon the legitimacy of possible issue. Of course, these would be circumstances highly prejudicial to the appellee and his present wife.

In the case of *Dry* v. *Rice,* 147 Va. 331, 137 S. E. 473, this court said:

"There is some evidence tending to show that the residence of the appellant in Nevada was not *bona fide.*

\*     \*     \*     \*     \*

■ "We shall not enter upon a discussion of the sufficiency of the evidence to sustain the charge of fraud in this respect, because we are of the opinion that appellee is precluded by his laches from now setting up that charge. It should be observed, however, that while lack of jurisdiction of the foreign court may be shown, yet where it is sought to impeach such judgment for fraud imposed upon the foreign court touching a jurisdictional fact, the evidence must be of the most satisfactory and convincing kind, for every presumption will be indulged in favor of jurisdiction found by the foreign court, until the contrary is clearly shown.

\*　　\*　　\*　　.\*　　\*

"The safety of society imperatively demands that one who seeks to overthrow an apparently valid decree of divorce should proceed with the utmost promptness upon discovery of the facts claimed to show its invalidity. It must be apprehended that a man who has secured a decree of divorce, valid on its face, may endeavor to marry again, thus entangling some innocent woman in most intolerable difficulties, should the divorce be afterwards annulled. In such a case, one who seeks the aid of equity should, *in limine,* make it appear that she has proceeded in good faith and with reasonable diligence."

In the case of *Cameron* v. *Cameron,* 107 W. Va. 655, 150 S. E. 225, this was said:

"Where the defrauded party has delayed in asserting her rights for an unreasonable time the decree should not be disturbed. Every principle of estoppel and laches should be applied to defeat the party complaining of fraud where a second marriage has taken place. 2 Nelson Divorce and Separation, Section 1053. This rule is reiterated and elaborated in Section 1056. It is universally recognized.

\*　　\*　　\*　　\*　　\*

"We are of the opinion that the delay of plaintiff in instituting this suit was unreasonable under the circumstances, and that the decree of the lower court refusing her relief must be affirmed."

In the quite recent case of *Hodnett* v. *Hodnett,* 163 Va. 644, 177 S. E. 106, this was said:

"Whether or not Mrs. Hodnett failed to contest the divorce suit in question because of false promises made to her by the defendant, as alleged, and if so, whether or not she would have been able to make a successful defense to said suit, as also alleged, are questions of fact upon which the evidence is in direct conflict. In the view

we take of the case, however, it is unnecessary to pass upon those questions, for the reason that, even if it be conceded that the evidence is sufficient to sustain said allegations, we think it clear that Mrs. Hodnett has lost the rights she is now undertaking to assert by her laches in waiting until the defendant had married another woman while a decree of divorce, valid on its face, was in effect, before taking any steps to correct the fraud she claims was perpetrated upon her.''

In 17 American Jurisprudence 575, is this:

''The party who obtained the divorce, even though such a decree is not entitled to recognition in another state, is generally regarded as estopped from asserting the continuance of the matrimonial relation or otherwise attacking the decree in another state. A wife who leaves the matrimonial domicile and goes into another state where she invokes the jurisdiction of a court of that state in a divorce proceeding in which a decree of divorce is rendered cannot thereafter assert an interest in the property of the husband after his death.

\*      \*      \*      \*      \*

''One who has participated in the obtaining of a fraudulent divorce is not entitled to allege its invalidity.''

See also *Guggenheim* v. *Wahl,* 203 N. Y. 390, 96 N. E. 726, Ann. Cases 1913 B, 201, 39 A. L. R. 697; *McCall* v. *McCall,* 228 N. Y. Supp. 347, 86 A. L. R. 1333; *Bledsoe* v. *Seaman,* 77 Kan. 679, 95 P. 576; *McIntyre* v. *McIntyre,* 211 N. C. 698, 191 S. E. 507; The Restatement of the Law of Conflict of Laws, Paragraph 112, page 169.

We can do none other than affirm the decree of the trial court.

*Affirmed.*