## Staunton

ELIZABETH PARKER BARTSCH v. SIGNE G. BARTSCH.

September 11, 1963.

Record No. 5611.

Present, Eggleston, C. J. and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*C. Wynne Tolbert* and *Brainard H. Warner, III*, for the appellant.

*Whitford W. Cheston*, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

Mrs. Signe G. Bartsch,[1] sometimes hereinafter called appellee, filed in the Circuit Court of Fairfax county, Virginia, on December 19, 1960, an application for a declaratory judgment against Elizabeth

---

[1] Signe G. Bartsch died on April 15, 1963, while this appeal was pending. Virginia Code, 1950, § 8-148.

Parker Bartsch, hereinafter called appellant. It was alleged that appellee was married on June 21, 1902, in the District of Columbia, to Paul Bartsch, sometimes hereinafter called Dr. Bartsch; that on April 4, 1933, she was granted a divorce *a mensa et thoro* from Bartsch on the grounds of cruelty in the U. S. District Court for the District of Columbia; that on May 17, 1938, the petition of Bartsch for "enlargement" of said decree into a decree for an absolute divorce was dismissed with prejudice; that on September 30, 1939, Bartsch obtained a decree for an absolute divorce from appellee in Reno, Nevada; that the Nevada court was without jurisdiction as Bartsch "was not a domiciliary of the State of Nevada at the time of that divorce proceeding, but was actually a resident and domiciliary of the District of Columbia;" that the sole purpose of Bartsch in going to Nevada was to obtain a divorce so that he could marry the appellant; that appellee was not served with process in said case in the State of Nevada, nor did she participate therein "in any fashion;" that on September 30, 1939, Bartsch and appellant "did go through a marriage ceremony" in Reno, Nevada, and that said ceremony was a nullity. It was further alleged that Bartsch immediately returned after the ceremony to the District of Columbia, where he resumed his position with the Federal government, from which he had taken a leave of absence; that Bartsch died April 24, 1960, at the age of 88; that his will was probated in Fairfax county, Virginia, his residence at the time of his death; that on June 3, 1960, appellant qualified as executrix of the estate of Bartsch; and that on December 19, 1960, appellee renounced the will of Bartsch and elected to take her statutory share of his estate as his widow.

Appellee asked that the court declare her to be the lawful widow of Paul Bartsch; that the decree of divorce which he obtained in Nevada be declared null and void. She assigned no reason for her delay in challenging the validity of the Nevada divorce decree entered 21 years prior thereto.

Appellant demurred to appellee's petition on the grounds that the proceeding in Nevada was regular in all respects and the decree entitled to full faith and credit in Virginia; and that appellee was guilty of laches and unreasonable delay in instituting this proceeding. The trial court being of opinion that evidence should be taken before a final determination of the question raised by the demurrer, overruled the demurrer and granted appellant leave to file an answer. Appellant filed an answer denying the pertinent allegations of the petition and asserting the grounds of her demurrer in defense.

The evidence was heard *ore tenus,* and at the conclusion thereof, a final decree was entered declaring Signe Bartsch, appellee, to be the lawful widow of Paul Bartsch, deceased. Included in the decree was a finding of facts, setting out the legal proceedings in the several suits between appellee, Signe Bartsch and Dr. Paul Bartsch, and the conclusion that the Nevada court was without jurisdiction to enter the decree of September 30, 1939, because the domicile and legal residence of Bartsch was, on the date of the decree and for several years prior thereto, in the District of Columbia; "that under the authority of *Howe* v. *Howe,* 179 Va. 111, 18 S. E. 2d 294, the court doth find the doctrine of laches inapplicable to this suit;" and "that at the time of the death of Bartsch on April 24, 1960, he was lawfully married to Signe G. Bartsch."

Appellant duly excepted to the finding of the court and to its conclusions of law. On petition of appellant, we granted this appeal.

Paul Bartsch, a scientist, teacher and lecturer, holding a Doctor's degree, was employed by the United States National Museum, Washington, D. C. continuously from 1896 until his retirement in 1946. After his marriage to appellee in 1902, the couple lived together until some time in August, 1929, when they separated. Subsequently, appellee filed a suit for divorce in Washington, D. C., which was later dismissed upon a reconciliation being effected between the parties. They were unable, however, to keep their differences adjusted, and on March 9, 1931, appellee filed a second suit in the District of Columbia for a divorce *a mensa et thoro* on the grounds of cruelty. On April 4, 1933, she was awarded a decree of divorce *a mensa et thoro.* Bartsch was directed to pay to her the sum of $180.00 per month as permanent alimony.

Thereafter, on April 29, 1936, Bartsch filed a suit against the appellee in the District of Columbia, praying for an absolute divorce upon the ground that the parties had voluntarily lived separate and apart more than five years.

Appellee appeared, answered and moved the court to dismiss the proceeding, in that the matter in controversy between the parties had become *res adjudicata* by reason of the decree of April 4, 1933 between the parties. On May 17, 1938, after a hearing, the suit "was dismissed."

On July 1, 1939, Bartsch went to Reno in Washoe county, Nevada. After staying there for "the statutory period," he filed a suit in the Second Judicial District Court of the State of Nevada, in and for the

County of Washoe, for an absolute divorce from appellee. A hearing was had on the 30th day of September, 1939, and a final decree was entered on that day, awarding Bartsch an absolute divorce. The decree further ordered Bartsch to pay $100.00 per month to Signe Bartsch, until her death or remarriage.

Photostatic copies of a portion of the record in the Nevada proceeding were presented as exhibits in the present proceeding. The decree of September 30, 1939, recites that the cause came on to be heard "upon the complaint of the plaintiff, and the default of the defendant therein, after defendant's having been personally served with a certified copy of the complaint and summons issued herein." The court found, "as a matter of fact, that each and every and all the allegations of plaintiff's complaint are true," and concluded, "as a matter of law, that plaintiff is entitled to a judgment and decree for an absolute divorce," and it so adjudged. A copy of the summons in that case contained an affidavit by a deputy sheriff of Osceola county, Florida, that on August 29, 1939, he personally served the summons by delivering on that day "to Signe G. Bartsch, the said defendant, personally, in St. Cloud, County of Osceola, State of Florida, a copy of the annexed summons attached to a duly certified copy of the complaint," in the Nevada suit.

Also there is a certified copy of the transcript of the testimony, in which Bartsch testified that he had come to Washoe county, Nevada, on July 1, 1939, with the intention of making that place his home; that it was still his home; that the allegations of his complaint were true; and that he and Mrs. Signe Bartsch had lived separate and apart for about ten consecutive years last past without cohabitation. Another witness, testifying on September 30, 1939, said that he knew Bartsch, and that the latter had lived in Washoe county continuously since July 1st of that year.

No copy of the bill in the Nevada proceeding was presented in evidence, and there was no proof offered as to the period of residence required for jurisdiction of a divorce proceeding in Nevada.

The evidence in the present case further showed that appellee, immediately after she was served with the process in the Nevada suit, wrote to her attorney, Austin Canfield, of Washington, D. C., now deceased, and her adult son, Henry Bartsch, advising them of the receipt of the process and asking for their advice. She was advised both by her attorney and her son not to take any action in the matter until Bartsch returned to the District of Columbia. Bartsch returned

to Washington in the early part of October, 1939; but she thereafter refrained from taking action because she was told to "leave it alone so long as Dr. Bartsch paid me $180.00 a month." She further explained that she took that course because she feared that if she challenged the Nevada decree, she would lose her monthly allowance and Bartsch would lose his good standing.

After the entry of the Nevada decree, Bartsch made the $180.00 per month payments to appellee as required by the District of Columbia decree.

On August 9, 1950, about 11 years after the Nevada decree, appellee herein filed in the District Court of the United States for the District of Columbia an application for a declaratory judgment. She set out that Bartsch and the appellant herein, Elizabeth Bartsch, had maliciously interfered with the domestic affairs of her son and his family; that he had threatened to discontinue his monthly payment of alimony to her; and that he had obtained the Nevada decree by fraud and misrepresentation. She prayed that the Nevada decree be adjudged void; that she be declared the lawful wife of Bartsch, subject to the District of Columbia decree of April 4, 1933; and that the property rights of the parties be determined.

On May 3, 1952, Signe Bartsch, "in her own proper person," moved the court for leave to withdraw the above complaint, and for an order dismissing the suit without prejudice. The court granted her motion on that day.

Appellant, Elizabeth Bartsch, testified that she first met Bartsch in 1926 or 1927, when she was a student taking a course taught by Bartsch at George Washington University; that she subsequently graduated as a doctor of medicine; that after her graduation, she went into medical practice in 1934 with Dr. Dunn, a sister of Dr. Bartsch; that she saw Bartsch from time to time during the years from 1934 to 1938, and became "seriously interested" in him about 1938; that she and Bartsch never had a formal engagement; that on September 29, 1939, she received a telegram from Bartsch asking her to join him in Reno immediately; that Bartsch had told her he was going to Reno, "because he wanted a home, something he had never had;" that she left Washington by airplane on the night of September 29th, and arrived in Reno the next morning, met Bartsch at the place where he was staying, a ranch house or motel; that Bartsch procured a marriage license and they were married about 4:00 p. m. on September 30th. She admitted that in conversations with Bartsch prior to his trip to Reno that she knew: "Divorce was in the picture;

surely;" that she could not testify as to his intentions in going to Reno; but that "he did not go out there with the intention of calling me up to marry him and come back. That was no arrangement between us at all." After their marriage, they left Reno the same afternoon by plane for San Francisco on a honeymoon, and about seven days later returned to Washington, D. C. She said she and Bartsch purchased a farm in Fairfax county, Virginia, in 1942; but did not move their residence to Virginia until 1949. Bartsch retired as a government employee in 1946. Appellant, a licensed physician, continued the practice of medicine.

Henry Bartsch, the son of Paul and Signe G. Bartsch, testified that he participated in the preparation and filing of the suit of his mother for a declaratory judgment in 1950. He said he had twenty years experience in patent law and three years of law school training. He testified that he rendered certain services to the law firm which represented his mother, in exchange for their services to her; that except for the 1950 suit, which was withdrawn in 1952, she took no action with reference to challenging the Nevada decree from the time she received the summons in that suit until after Bartsch's death in 1960.

There is some evidence which tends to show that the residence of Dr. Bartsch in Nevada was not bona fide, contrary to his own testimony in the Nevada proceeding. We shall not enter into a discussion whether it was sufficient to sustain the charge of fraud and misrepresentation, because we are of opinion that appellee is precluded by her laches from setting up that charge. The lengthy recital of the evidence has been made to show the circumstances and extent of appellee's delay in instituting this proceeding.

"It is elementary that unreasonable delay in the assertion of rights without excuse and coupled with the death of material witnesses and the loss of material evidence which works to the disadvantage of adverse parties will warrant the denial of equitable relief. 2 Pomeroy's Equity Jurisprudence, 5th Ed., § 419, etc., p. 171, etc.; 7 Mich. Jur., Equity, § 26, etc., p. 47, etc.; *O'Neill* v. *Cole, supra,* and authorities there collected." *Rowe* v. *Coal Corporation,* 197 Va. 136, 144, 87 S. E. 2d 763.

Also see *Hogg* v. *Shield,* 114 Va. 403, 76 S. E. 934.

The application of the doctrine of laches in equity cases is discussed at length in 19 Am. Jur., Equity, sections 489-515, inclusive, pages 338 *et seq.*; 30 C. J. S., Equity, sections 112-132, inclusive, pages 520 *et seq.*, 7 Mich. Jur., §§ 28-34, pages 50 *et seq.*

"There is no absolute rule as to what constitutes laches or staleness of demand, and no one decision constitutes a precedent in the strict sense for another; each case is to be determined according to its own particular circumstances." 30 C. J. S., Equity, § 115, page 528.

In Virginia, and elsewhere generally, the doctrine of laches and estoppel has been held applicable to the right to attack or impeach foreign divorces. *Dry* v. *Rice*, 147 Va. 331, 137 S. E. 473; *Hodnett* v. *Hodnett*, 163 Va. 644, 649, 177 S. E. 106; *McNeir* v. *McNeir*, 178 Va. 285, 291, 16 S. E. 2d 632; *Tarr* v. *Tarr*, 184 Va. 443, 453, 35 S. E. 2d 401; *Swift* v. *Swift*, 239 Iowa 62, 29 N. W. 2d 535; *Blair* v. *Blair*, 96 Kan. 757, 153 P. 544; *Pawley* v. *Pawley*, (1950) Fla. , 46 So. 2d 464, 28 A. L. R. 2d 1358; *Carpenter* v. *Carpenter*, 93 F. Supp. 225; *Jannino* v. *Jannino*, 234 S. C. 352, 108 S. E. 2d 572; *Allsup* v. *Allsup*, 199 Ark. 130, 132 S. W. 2d 813; 27B C. J. S., Divorce, § 364, pages 849 *et seq.*; 17 Am. Jur., Divorce and Separation, § 536, pages 631 *et seq.*; 17A Am. Jur., Divorce and Separation, § 966, pages 149 *et seq.* Cf. Annotation 12 A. L. R. 2d 162.

On the other hand, the doctrine has been held not to apply in a number of cases because of the particular circumstances therein, notably for short delays, failure of notice, or some other reason. Among them appellee cites the following: *Santangelo* v. *Santangelo*, 137 Conn. 404, 78 A. 2d 245; *Croyle* v. *Croyle*, 184 Md. 126, 40 A. 2d 374; *Lawler* v. *Lawler*, 2 N. J. 527, 66 A. 2d 855; *Huggs* v. *Huggs*, 195 F. 2d 771; *Howe* v. *Howe*, 179 Va. 111, 18 S. E. 2d 294. *City of Los Angeles* v. *Morgan*, 105 Cal. App. 2d 726, 234 P. 2d 319.

A multitude of cases involving the recognition of a foreign divorce decree attacked on the ground of lack of domicile are discussed in annotation in 28 A. L. R. 2d 1303, *et seq.*

The facts before us in the present case are much like those in *Dry* v. *Rice, supra,* 147 Va., except that here the delay in making an attack on the foreign decree was much longer. They are quite different from those in *Howe* v. *Howe, supra,* 179 Va., the only similarity being the manner in which the divorce decrees were obtained.

In the *Howe* case, *supra,* the first Mrs. Howe lived with her husband until the day he departed for Arkansas. Telling her he was "going on a little vacation" he kissed her good-bye, taking with him only such clothes as were necessary for that kind of a trip. Upon learning of the suit, Mrs. Howe was deeply distressed. She

went to Arkansas and in tears sought in vain to effect a reconciliation. Less than two years after Dr. Howe had obtained his decree, Mrs. Howe instituted suit to impeach it. We held that under those circumstances and others noted in the opinion, that laches should not be applied to her suit. At the same time, we made reference to *Dry* v. *Rice, supra,* 147 Va., and the holding therein.

In the present proceeding, Dr. Bartsch did nothing to mislead the appellee. Their marriage was turbulent and unhappy. They separated in 1929, and she filed a suit for divorce, which was dismissed upon a temporary reconciliation between the parties. In 1931, she filed a second suit, in which she obtained a divorce *a mensa et thoro*. After living separate and apart for about ten years, Bartsch instituted the Nevada proceeding, and caused notice of it to be served upon her personally, together with a copy of his bill of complaint. She took no part in that suit, and upon his return to Washington in 1939, she refrained from taking any action attacking the Nevada decree. In the meantime, she acquiesced in the Nevada decree, and enjoyed the full fruits of alimony paid to her, all that she apparently desired. In voluntarily dismissing her suit instituted in 1950, for a judgment declaring the Nevada decree null and void, she signified her acquiescence in that decree. After the dismissal of that suit, she took no action to impeach the decree until Bartsch had died, eight years later. At that time their marital relations had ceased to exist for more than thirty years.

It is plainly apparent that appellee had no interest in Bartsch or the decree he obtained in Nevada, except as to the alimony paid by him. Their marriage had been terminated by his death, and it is apparent that appellee asserted her relation as the widow of Bartsch, and the invalidity of his decree of divorce, solely for the purpose of obtaining a portion of his property.

It may be noted here that it is not now contrary to the public policy of Virginia to obtain a decree of absolute divorce when husband and wife "have lived separate and apart without any cohabitation and without interruption for three years." Virginia Code, 1950, § 20-91 (9) 1960 Rep. Vol., 1962 Supp., as amended.

In *Parks* v. *Parks*, (1940) 73 App. D. C. 93, 116 F. 2d 556, it was held that the 1935 amendment to the D. C. Code, Supp. V Title 14, § 63, permitted plaintiff, whose wife had obtained a limited divorce from him, to obtain an absolute divorce, if at the time his suit was filed "five consecutive years of 'voluntary separation' had elapsed," although the separation resulted from his fault.

Here appellee and Dr. Bartsch "lived separate and apart without any cohabitation and without interruption" for more than twenty years prior to the institution of this proceeding.

We repeat the statement that each case is to be determined according to its own particular circumstances. We did not intend by the language of the *Howe* case, *supra*, to hold that laches was inapplicable to any attack upon the validity of a foreign decree. This is shown by our decisions in the subsequent cases hereinbefore cited.

The refusal to apply laches in the *Howe* case, *supra*, was due to the particular circumstances noted in the opinion in the case. The first Mrs. Howe did everything she could to preserve her marriage, and promptly brought suit to invalidate the foreign divorce decree. Here, Signe Bartsch, appellee, did nothing to preserve her marriage. The marital relations between her and Bartsch had ceased thirty years before his death, and she had acquiesced in his remarriage for more than twenty years. Moreover, she presented no reasonable excuse or justification for her delay in seeking an annulment of the Nevada decree.

In addition to the unreasonable delay and the conduct of appellee, the death of Bartsch, a material witness, and the injury and prejudice which will result to appellant in the event relief be granted the appellee require that the doctrine of laches be applied in this case.

Having reached this conclusion, we deem it unnecessary to consider any of the remaining assignments of error of appellant.

For the reasons stated, we are of opinion that the trial court erred (1) in failing to hold that whatever rights appellee had to assail the Nevada divorce had been lost by her laches; and (2) in declaring that appellee was the lawful widow of Dr. Bartsch, and appellant, Elizabeth Parker Bartsch, not his lawful widow.

The decree complained of is reversed and set aside, and an order will be entered in this Court dismissing the petition of appellee for a declaratory judgment.

*Reversed and final decree.*