## CIRCUIT COURT OF FAIRFAX COUNTY

Joyce Robinson

v.

Raymond Robinson

April 8, 1994

Case No. (Chancery) 129243

By Judge Arthur B. Vieregg, Jr.

The above-captioned case came before the Court on January 13, 1994, upon defendant's plea in bar based on the preclusive effect of an earlier West Virginia divorce decree. In her suit, the plaintiff asks the Court to award a divorce *a vinculo matrimonii* and spousal support and to equitably distribute the parties' marital property. The Court took the matter under advisement and is now prepared to rule.

### Factual Findings

Based upon the evidence adduced at this hearing, the Court makes the following findings of fact.

Joyce and Raymond Robinson were married on March 18, 1972, and have two children, Beth Marie Robinson, born July 1, 1975, and Matthew Wade Robinson, born July 20, 1976. During their marriage, the parties separated three times because of Mr. Robinson's extramarital affair with Joyce Stewart. Ms. Stewart gave birth on September 6, 1985, to Brandon Nicole Stewart Robinson, the illegitimate daughter of Mr. Robinson and Ms. Stewart. In December, 1988, Mr. Robinson and his children, Beth and Matthew, visited Ms. Stewart and Brandon in West Virginia; Mr. Robinson began visiting and spending time in West Virginia.

Mr. and Mrs. Robinson lived in Fayetteville, North Carolina, until March 20, 1989, when Mr. Robinson left the marital residence and separated from Mrs. Robinson. At some point, he moved to West Virginia.

After March 20, 1989, Mrs. Robinson retained counsel and instituted proceedings in Cumberland County, North Carolina, for a divorce and an adjudication as to child custody and support and for equitable distribution of the parties' property.

Beth moved to live with Mr. Robinson in West Virginia in March, 1989.

The North Carolina Court conducted a temporary child support and custody hearing on July 10, 1989, and entered an order on August 9, 1989, which ordered that Mrs. Robinson be awarded custody of the children; that Mr. Robinson provide child support; and that Mrs. Robinson be awarded exclusive use and possession of the marital residence.

Mr. Robinson retained West Virginia counsel and filed for a divorce in Putnam County, West Virginia, on March 12, 1990. Mrs. Robinson lived at the North Carolina residence reflected in the West Virginia proceedings; received notice of those proceedings on March 16, 1990; forwarded those documents to her North Carolina attorney; and never made an appearance in the West Virginia divorce proceedings. The West Virginia Court entered a final decree of divorce on May 11, 1990 ("the West Virginia Decree"). The West Virginia court papers indicate that a copy of the West Virginia decree was sent to Mrs. Robinson, but she could not recall in her testimony whether she received a copy of it in May, 1990. She believed the West Virginia Decree was valid and assumed she was divorced.

The West Virginia Decree recited as a finding of fact that Mr. Robinson had lived separate and apart from Mrs. Robinson in excess of one year beginning on or about March 10, 1989.

Mr. Robinson and Ms. Stewart ("Mrs. Stewart-Robinson") were married on May 19, 1990. Mrs. Robinson testified that she learned of Mr. Robinson's marriage probably because Beth, who was living with Mr. Robinson at the time, told her. She could not recall whether she relayed this information to her attorney.

Subsequently, Mr. Robinson and Mrs. Robinson entered into a Consent Order which dismissed her North Carolina suit on June 25, 1990 ("the North Carolina Order"). The North Carolina Order contained a finding of fact that Mr. Robinson was a citizen and resident of Cumberland County "at the time of the filing of this action, but is now a resident of the State of West Virginia"; dismissed the claim for divorce and alimony; awarded primary custody of Matthew to Mrs. Robinson

and primary custody of Beth to Mr. Robinson; ordered the parties to provide support for the minor children; awarded reasonable visitation; and ordered that the family residence be listed for sale and that the proceeds be held in trust.

Mrs. Robinson and Matthew moved to Lexington, Kentucky, in July, 1990.

Beth commenced residing with Mrs. Robinson in August, 1990.

Mrs. Robinson has filed various child support motions and obtained child support orders in Kentucky and Virginia since November, 1990.

Mrs. Robinson frequently traveled to Indiana to assist her ill mother during 1990 and 1991.

Mrs. Robinson retained another attorney in Kentucky and filed for child custody in Fayette County, Kentucky. Mr. Robinson made an appearance in that action.

Mrs. Robinson filed a U. S. Individual Income Tax Return and a Kentucky Individual Income Tax Return for 1991, dated February 1, 1992, not as a married individual but as a head of household.

At some point, Mrs. Robinson's Kentucky attorney advised her to retain counsel in Virginia to file for child support. She contacted her present attorney. In February, 1993, she learned that the West Virginia decree may be void, although she previously had thought it was valid.

### Decision

This Court concludes that Mrs. Robinson is precluded from attacking the validity of the West Virginia Decree and obtaining the equitable relief she seeks on account of the equitable doctrine of laches.[1] *See, Bartsch v. Bartsch*, 204 Va. 462, 468 (1963); *Hodnett v. Hodnett*, 163 Va. 644, 649–51 (1934); *Dry v. Rice*, 147 Va. 331, 337 (1927). Since Mrs. Robinson learned of the West Virginia proceedings in March, 1990, and dismissed her North Carolina divorce suit in June, 1990, but did not bring this suit until February, 1993, she clearly delayed asserting her known legal rights. *See Hodnett*, 163 Va. at 648; *Dry*, 147 Va. at 339–40. Her delay in attacking the validity of the West Virginia

---

[1] The Court does not opine as to whether she is entitled to spousal support in light of the decisions contained in *Newport v. Newport*, 219 Va. 48 (1978), and *Gibson v. Gibson*, 5 Va. App. 426 (1988). As a consequence of the decision contained in this letter opinion, however, Mrs. Robinson is not entitled to the equitable distribution relief she seeks since it can only be rendered "upon decreeing a divorce . . ." or in accordance with § 20–107.3(J). *See*, Va. Code Ann. § 20–107.3(A) and (J).

divorce is not justified. Despite her duties of caring for her ill mother and for her own household, she consistently retained legal counsel and enforced her rights with respect to child support. Furthermore, she knew Mr. Robinson had filed for divorce; she received notice of those proceedings which she forwarded to her North Carolina attorney; and she subsequently dismissed the North Carolina proceedings. In the course of these developments, she also learned of Mr. Robinson's marriage to Ms. Stewart.

Moreover, her delay causes great and obvious prejudice to Mr. Robinson, Mrs. Stewart-Robinson, and their daughter, Brandon. Mr. Robinson, subsequent to the West Virginia Decree and with Mrs. Robinson's knowledge, married his former paramour and thereby legitimated his daughter, Brandon. Mrs. Robinson's delay, therefore, affects not only her and her husband but greatly prejudices innocent parties. The Virginia Supreme Court in *Dry* declared that "where such delay is attended . . . by the change of the relation of the parties which cannot be restored, or by injury to innocent third persons which cannot be compensated in damages, a court of equity will not lend its aid to the enforcement of an otherwise apparent right." 147 Va. at 339–40; *see also, Hodnett,* 163 Va. at 650.

For these reasons, this Court concludes that Mrs. Robinson's attack upon the validity of the West Virginia Decree is barred on equitable principles. Consequently, Mrs. Robinson is not entitled to the equitable relief of a divorce *a vinculo matrimonii.* But for these equitable considerations, the Court likely would have concluded that Virginia courts would not have been bound by the West Virginia decree, *see Williams v. North Carolina,* 325 U.S. 226, 65 S. Ct. 1092 (1945); *Slaughter v. Commonwealth,* 222 Va. 787, 793 (1981); *Bloodworth v. Ellis,* 221 Va. 18, 21 (1980), because the West Virginia court lacked subject matter jurisdiction, *see Belcher v. Belcher,* 151 S.E.2d 635, 638–39 (W. Va. 1966); *Tate v. Tate,* 142 S.E.2d 751, 753–54 (W. Va. 1965); *Shaw v. Shaw,* 187 S.E.2d 124, 126–27 (W. Va. 1972).