# Richmond

## Henry Lee Hargrow v. George M. Watson, Administrator, Etc., Et Al.

June 16, 1958.

Record No. 4822.

Present, All the Justices.

The opinion states the case.

*T. L. Sawyer* and *Toy D. Savage, Jr. (Willcox, Cooke, Savage & Lawrence,* on brief), for the plaintiff in error.

*M. R. Broudy* and *Joseph E. Baker (Broudy & Broudy,* on brief), for the defendants in error.

WHITTLE, J., delivered the opinion of the court.

George M. Watson, administrator of the estate of Lois Elizabeth Watson, deceased (sometimes known as Lois Elizabeth Hargrow), filed a motion for judgment against Willie Grasty and Henry Lee Hargrow, seeking damages for the wrongful death of his decedent.

The motion alleged that plaintiff's decedent was a passenger in an automobile owned and operated by Henry Lee Hargrow which was in collision with an automobile owned and operated by codefendent Grasty. The motion charged that at the time of the accident both defendants were operating their respective automobiles in a grossly negligent and reckless manner, as a result of which plaintiff's decedent was killed.

The case was tried before a jury which returned a verdict for the plaintiff against both defendants in the sum of $17,500. Over the objection of Hargrow judgment was entered on the verdict. To review the ruling we granted Hargrow a writ of error.

No appeal was sought by defendant Grasty.

Hargrow's response to the motion for judgment averred: "* * * (T)hat the said Lois Elizabeth Hargrow was guilty of contributory negligence," and that "* * * (T)he said Lois Elizabeth Hargrow and he were legally married a number of years prior to her death, and that such marriage continued as a valid marriage until her death;

that children were born of said marriage; that this action cannot be maintained against him, as the law of this State does not permit a recovery in any action for damages by one spouse or the personal representative of one spouse against the other spouse; and a reply is demanded to this defense as provided in Rule 3:11."

The reply called for under Rule 3:11 was duly filed, in which the alleged marriage of the parties was denied.

In argument before us and in the briefs Hargrow treats the two defenses and the court's rulings thereon in the following order:

(1) That the parties were lawfully married at the time of the accident, and the Virginia rule does not permit a recovery in an action for damages by one spouse or the personal representative of one spouse against the other spouse. Burks Pleading and Practice, 4th Ed., § 65, pp. 130, 131; 9 M.J., Husband and Wife, §§ 90, 92, pp. 580, 581; *Keister's Adm'r* v. *Keister's Ex'ors*, 123 Va. 157, 96 S. E. 315, 1 A.L.R. 439; *Furey* v. *Furey*, 193 Va. 727, 71 S. E. 2d 191; and

(2) That plaintiff's decedent was guilty of contributory negligence.

We will treat these matters in the same order. The errors assigned dealing with the trial court's treatment of the first defense developed as follows: After Hargrow filed the aforementioned defense to the action in which he asserted that he and plaintiff's decedent were married, plaintiff, pursuant to § 8-320, Code, 1950, filed interrogatories in which Hargrow was asked, *inter alia*, the date he claimed said marriage took place, to which he stated under oath that "the marriage was celebrated in the summer of 1949."

Upon the trial of the case the plaintiff called Hargrow as an adverse witness and examined him both as to the accident and his alleged marriage. It will be remembered that in the defensive pleading it was asserted that he and Lois "were legally married *a number of years* prior to her death," and Hargrow had stated in answer to the interrogatories that the marriage occurred "in the summer of 1949". The witness was reminded of his statement and asked if he recalled when he was married, to which he answered, "It was in some part of 1949".

In answer to direct questions Hargrow stated that the marriage could not have taken place in 1947; that it absolutely "could not have taken place in 1948"; that it could not have taken place in 1950; that it could not have been after 1949; that it was definitely in the year 1949 and "at no other time."

It was then established that Hargrow had been previously married

to one Louise Johns and a certified copy of a decree entered in the Circuit Court of Princess Anne County on the 23rd day of April, 1952, granting said Louise Johns a divorce *a vinculo matrimonii* from Hargrow was introduced. After the introduction of this decree the trial judge asked Hargrow:

"Q. At the time you married this woman [Lois Elizabeth Watson] * * * you had a living wife from whom you had not been divorced?

"A. Well—

"Q. The court records show that three years later you got your divorce?

"A. That is right.

"By Mr. Baker [Attorney for plaintiff]:

"Q. You say that is right?

"A. Yes.

"Mr. Baker: Answer these gentlemen.

"Mr. Savage [Attorney for Hargrow]: No questions."

The error complained of developed when the trial court refused to permit Hargrow, on direct examination, to take the stand and explain to the jury why he had placed the date of his marriage in the year 1949.

Hargrow's testimony, when examined as an adverse witness, to the effect that the marriage occurred in 1949, had the force of a judicial admission, and he was bound thereby unless the court, in its reasonable discretion, would permit the admission to be "withdrawn, explained or modified." 50 A.L.R. 973, 979; Black's Law Dictionary, 3rd Ed., Admissions, p. 61; 20 Am. Jur., Evidence, § 1181, p, 1032; *Crew* v. *Nelson*, 188 Va. 108, 113, 49 S. E. 2d 326, 328. Hargrow contends that the court abused its discretion in this regard.

Before ruling on the question of whether or not Hargrow be permitted to explain to the jury why he stated that the marriage occurred in 1949, the court, in the absence of the jury, heard the proposed evidence which follows:

Clarence P. Holland testified that he was a former employer of Hargrow's. He stated that he "let Hargrow off to get married," and that Lois and Hargrow later told him they were married. He did not know the month or year in which they claimed to have been married. Cora Bryant testified that Hargrow and Lois at one time lived with her; that her house burned in 1952; that some three years previously she had been shown "some license papers" by Lois,

"around the year 1949." These papers she said were burned when the house burned. James Lindsay testified that a woman named Lois lived with Hargrow near "Lake Smith" and that "it was generally reputed in the area that they were man and wife," and that they had four children. He admitted that he had not discussed the marital status of the parties with anyone other than Hargrow and Lois. Ruth Burton, a sister of Hargrow's, testified that it was "generally reputed in the area" that the parties were married. She admitted that she had only discussed the matter with her brother and Lois, and that she did not know the date of the marriage. Hargrow stated that in his previous examination he had fixed the date of his marriage in 1949 because his former wife had told him that the date of their divorce was 1949; that he had no independent recollection as to the date of the marriage; that the marriage took place "three or four months" after his divorce, and that he could not remember whether it was three months or four months. This was the evidence Hargrow desired to introduce before the jury. Manifestly it was without probative value.

The affirmative defense of marriage was asserted by Hargrow. His own evidence and the testimony which he sought to introduce demonstrate that he did not and could not by such evidence bear the burden of proof which was his. The exclusion of the proffered testimony was within the court's sound discretion, and the ruling that the evidence had no probative value and its admission would not be consistent with honesty and good faith was mainfestly correct. Under these circumstances, Hargrow was bound by his own testimony. *Massie* v. *Firmstone*, 134 Va. 450, 462, 114 S. E. 652.

The argument that proof of marriage may be established by cohabitation and repute is qualified by the principle that cohabitation and repute do not constitute marriage; that they only constitute evidence tending to raise a presumption of marriage which, like other presumptions of fact, may be overcome by countervailing evidence. *Reynolds* v. *Adams*, 125 Va. 295, 308, 99 S. E. 695.

Here the countervailing evidence is supplied by the documentary proof of the divorce decree of Hargrow and his former wife, and by Hargrow's own testimony which, with that of Cora Bryant, established that the alleged marriage took place prior to the divorce and was therefore void.

Relating to the above assignment of error it is argued that the court should have instructed the jury to disregard the statement

made by plaintiff's counsel in closing argument that Hargrow had fraudulently testified that he was married to the plaintiff's decedent in order to avoid liability. There is no merit in this assignment. The record discloses that counsel for Hargrow simply stated to the court, "I object to Mr. Broudy's statement that the defendant Hargrow made a fraudulent statement as to his marriage." No request to declare a mistrial was included in the objection, and no request was made that the court instruct the jury to disregard the remark. If such remark was improper, which we do not here decide, the error was waived. *C. & O. Ry.* v. *Folkes,* 179 Va. 60, 68, 18 S. E. 2d 309, 312; Burks Pleading and Practice, 3rd Ed., pp. 504, 505.

 The final assignment asserts that the court erred in refusing to grant Instruction No. D-VI, offered by Hargrow, and in refusing to permit Hargrow to testify before the jury in support of his defense that plaintiff's decedent was guilty of contributory negligence.

Instruction D-VI, refused by the court, is set out in the margin.* Hargrow's testimony bearing on the question and excluded by the court, follows:

"Q. When you left the tavern to drive home on the night that this accident occurred, did your wife, or Lois, raise any question about getting in the car with you?

"A. No, sir.

"Q. Did she complain at any time of the way you were driving?

"A. No, sir.

"Q. When you came around that curve, which was testified this morning to be some 100 yards before the impact, did she complain of the way you went around the curve?

"A. No, sir."

---

*The Court instructs the jury that the law places upon every person the duty to take such precautions for his own safety as a reasonably prudent person would take under like circumstances and conditions, and the failure to do so constitutes negligence in law. Therefore, if you find from a preponderance of all the evidence that Lois Elizabeth Hargrow continued to ride in Henry Lee Hargrow's automobile after she discovered, or by the exercise of ordinary care, should have discovered that the defendant, Henry Lee Hargrow, was under the influence of intoxicants, or was driving his automobile in a grossly negligent manner, without protest or making any effort to get out of same, she, having an opportunity to do so after such discovery, and that a reasonably prudent person, under these circumstances, would have taken such precautions for their own safety, then Lois Elizabeth Hargrow would be guilty of negligence and the plaintiff cannot recover against the defendant, Henry Lee Hargrow.

The first phase of this assignment involves the question of whether the evidence established that Hargrow was under the influence of intoxicants to such an extent that plaintiff's decedent was guilty of contributory negligence in riding in the car with him. In his brief and in argument before this court, counsel for the defendant has pointed to no evidence of Hargrow's supposed intoxication sufficient to put plaintiff's decedent on notice that he might be an unsafe driver. Hargrow testified that he only drank two beers about 5:30 p.m. on the day of the accident which occurred at 11:40 p.m.

Officer Bordeaux testified that codefendant Grasty admitted to him that he and the occupants of both cars had been drinking. No witness testified that they saw or examined Hargrow after the accident, and it is nowhere shown that he was intoxicated or visibly under the influence. *Basham* v. *Terry*, 199 Va. 817, 821, 102 S. E. 2d 285, 287, 288. Under these circumstances the court properly refused that part of Instruction D-VI which was predicated upon the alleged contributory negligence of plaintiff's decedent in riding with Hargrow "after she discovered, or by the exercise of ordinary care should have discovered that the defendant * * * was under the influence of intoxicants."

The defendant contends that this part of the instruction should have been given in view of our decision in *Yorke* v. *Maynard*, 173 Va. 183, 3 S. E. 2d 366. The facts in the instant case are entirely different from those in the *Yorke* case. The opinion in the *Yorke* case stated:

"After arriving at the Wigwam, Yorke and Cottle brought forth a quart and a pint of whiskey. The party had already been joined by Mr. Lutz and Miss Kilby, and they began the evening by mixing highballs, using ginger ale. They occupied one booth in the place of entertainment and all of them sat around the table, some drinking more than the others. Miss Maynard drank very little. She took two or three sips of one highball. Yorke, Cottle, and Lutz drank most of the whiskey. Yorke had four or five drinks from the quantity they had and also drank with another party at the Wigwam. Yorke and his party remained until closing time and at approximately 12:30 a.m. they decided to go to another place several miles distant for food. When driving to the latter place, Yorke lost control of the car while going around a curve and it turned over, injuring all of the occupants. * * * Yorke testified that he was not drunk but that he had taken four or five drinks and could feel the effects of them.

Witness Cox testified that Yorke 'was very much intoxicated; no doubt about that in my mind.' It is needless to detail more of the evidence for that set forth is sufficient for the purposes of this opinion." (173 Va., at pp. 185, 186; 3 S. E. 2d, at pp. 367, 368.)

Under this evidence we held that the issue of contributory negligence arising out of plaintiff's election to ride with Yorke should have been submitted to the jury; that the condition of Yorke as to sobriety was a material factor in ascertaining whether or not the plaintiff (Miss Maynard) was guilty of contributory negligence in riding with him. In this respect the two cases are readily distinguishable.

 The next phase of the assignment involves the question of whether or not the court erred in excluding the heretofore quoted testimony of Hargrow that plaintiff's decedent did not complain at any time of the manner in which he was driving, and did not complain when he "came around that curve which was testified this morning to be some 100 yards before the impact."

The undisputed evidence shows that after the parties left "Garden Inn" (the tavern) at about 11:00 p.m., they had been traveling nearly 45 minutes before the accident; that up until the time they reached "a slight curve" which, according to counsel for Hargrow "actually had no bearing on the accident," neither car had exceeded the speed of 40 miles per hour. Each defendant, Hargrow and Grasty, testified that when they reached the curve the other attempted to pass him.

While the evidence in this regard was sufficient to show that both drivers, during this short interval, were guilty of gross negligence, both as to speed and in their attempt to pass on the curve, yet all of such driving was confined to the curve and a point approximately 80 yards beyond, where the collision occurred. Under these circumstances the court properly excluded Hargrow's testimony to the effect that plaintiff's decedent did not complain of the way he was driving. Certainly the record discloses no apparent danger in the manner in which the car was being operated until the cars picked up speed and attempted to pass, at which time a protest would have been unavailing.

There being no conflict in this evidence, the court properly refused to submit to the jury the question of contributory negligence as embraced in the latter part of Instruction D-VI.

We see no reversible error in the record and the judgment is

*Affirmed.*