## Richmond

CLARA JOHNSON McCONKEY v. EDWARD CECIL McCONKEY.

June 13, 1975.

Record No. 740542.

Present, All the Justices.

*W. Leigh Ansell* (*Ansell, Butler & Canada*, on brief), for appellant.

*Wayne Lustig* (*Campbell, Lustig & Hancock*, on brief), for appellee.

Cochran, J., delivered the opinion of the court.

The question for our determination in this appeal is whether a wife, upon annulment of a voidable second marriage, is entitled to reinstatement of the alimony awarded her when she was divorced from her first husband.

Clara Johnson McConkey and Edward Cecil McConkey, her husband, were divorced by final decree entered September 23, 1968, by the trial court, which ordered Edward to pay Clara the sum of $200 per month as alimony. On October 16, 1971, Clara married Calvin D. Sykes. On November 5, 1971, Clara filed her bill of complaint against Sykes in the Circuit Court of the City of Norfolk seeking in the alternative an annulment of their marriage on the ground of Sykes's fraud or a divorce on the ground of his desertion. By final decree entered January 3, 1973, the marriage was annulled and declared to be "null, void and of no effect". On December 20, 1973,

Clara filed her petition in the trial court against Edward for reinstatement of alimony payments that had been terminated prospectively from July 1, 1972, by order entered July 17, 1972. Clara appeals the order entered February 11, 1974, denying her petition.

Clara contends that, as her second marriage was declared void retrospectively, she should be restored to the same position and standing she enjoyed before she went through the second marriage ceremony. We do not agree.

Section 20-110 of the Code of 1950, as amended, provides:

> "If any person to whom alimony has been awarded shall thereafter marry, such alimony shall cease as of the date of such marriage."

We need not decide whether this statute would apply to a person to whom alimony has been awarded who thereafter is involved in a void marriage. Clara's marriage to Sykes was not void *ab initio*. There is no evidence that the marriage ceremony was invalid. The annulment was based upon fraud on the part of Sykes, so that the marriage was voidable if Clara desired to have it annulled. *Pretlow* v. *Pretlow*, 177 Va. 524, 548-49, 14 S.E.2d 381, 387 (1941).

We have drawn a distinction between void and voidable marriages. A voidable marriage is "usually treated as a valid marriage until it is decreed void." *Toler* v. *Oakwood Smokeless Coal Corp.*, 173 Va. 425, 432, 4 S.E.2d 364, 367 (1939). And the parties to a voidable marriage "are husband and wife unless and until the marriage is annulled." *Payne* v. *Commonwealth*, 201 Va. 209, 211, 110 S.E.2d 252, 254 (1959).

Clara's reliance on *Robbins* v. *Robbins*, 343 Mass. 247, 178 N.E.2d 281 (1961) is misplaced. There, the court held that an annulled voidable second marriage did not relieve the first husband of his obligation to make alimony payments under a divorce decree that was silent as to the effect of remarriage. The Massachusetts statute, however, required proof of a change of circumstances before the previous award of alimony could be altered, and the court found no such change of circumstances in the case under consideration. Moreover, in *Surabian* v. *Surabian*, 362 Mass. 342, 285 N.E.2d 909 (1972), the court held, in distinguishing *Robbins* v. *Robbins, supra,* that where a separation agreement incorporated in a divorce decree provided that alimony should terminate upon the wife's remarriage the annulment of her voidable second marriage did not reinstate the alimony.

It has been generally held that annulment of a voidable second marriage does not entitle the wife to reinstatement of alimony payments from her first husband, where there is a statute providing that alimony shall terminate upon the recipient's remarriage. *Sefton* v. *Sefton*, 45 Cal.2d 872, 291 P.2d 439 (1955); *Flaxman* v. *Flaxman*, 57 N.J. 458, 273 A.2d 567, 45 A.L.R.3d 1026 (1971). Other jurisdictions have followed this rule even in the absence of such a statute. *Evans* v. *Evans*, 212 So.2d 107 (Fla. App. 1968); *Bridges* v. *Bridges*, 217 So.2d 281 (Miss. 1968); *Chavez* v. *Chavez*, 82 N.M. 624, 485 P.2d 735 (1971). And in New York, where there is now a statute authorizing the court, in annulment proceedings, to order the payment of alimony, it is held that the wife is no longer entitled to reinstate alimony upon annulment of a voidable marriage. *Gaines* v. *Jacobsen*, 308 N.Y. 218, 124 N.E.2d 290, 48 A.L.R.2d 312 (1954). Prior to the enactment of this statute the rule in New York had been to the contrary. *Sleicher* v. *Sleicher*, 251 N.Y. 366, 167 N.E. 501 (1929). The cases from various jurisdictions have been compiled in an annotation entitled "Alimony-Annulment of Later Marriage," 45 A.L.R.3d 1033 (1972). *See also* H. Clark, Law of Domestic Relations § 3.6 at 139-43 (1968).

We hold that where the divorced wife enters into a subsequent voidable marriage she thereby forfeits her right to alimony from her former husband. The husband has a right to assume the validity of the second marriage and to arrange his affairs accordingly. When his former wife voluntarily accepts the risk of a subsequent marriage, he should not be held accountable for her gullibility, mistake or misfortune. A voidable marriage may not be annulled for years. Indeed, in the present case the decree of annulment was entered more than a year after the marriage ceremony. To require the former husband to proceed during this period at his peril in making financial commitments that could be suddenly disrupted, through no fault of his, would be to penalize him for events beyond his control. We decline to do so.

The trial court did not err in denying Clara's petition and the judgment order is affirmed.

*Affirmed.*